**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. _____**

NORA'S STYLE SALON INC,

      Plaintiff,                                   **CLASS ACTION**

v.                                            **JURY DEMAND**

FARMER'S GROUP, INC. D/B/A
FARMERS UNDERWRITERS ASSOCIATION and
TRUCK INSURANCE EXCHANGE,

      Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Nora's Style Salon ("Nora's" or "Plaintiff"), on behalf of itself and all others similarly situated, states as follows for its Complaint against Defendants Farmer's Group Inc. d/b/a Farmers Underwriters Association ("Farmer's") and Truck Insurance Exchange ("Truck") (together, "Defendants"):

### INTRODUCTION

1.      This is a class action brought by Plaintiff Nora's against Defendants Farmer's and Truck, related to insurance policies that insure Plaintiff's properties, business operations, and potential liability in connection with Plaintiff's business operations. These insurance policies include Business Income coverage, Extra Expense coverage, coverage for loss due to the actions of a Civil Authority, and Business Income from Dependent Properties, and contains no virus exclusion.

2.      Plaintiff is a small business that purchased Defendants' insurance policy and made premium payments for a policy that, in the event of a catastrophe requiring a shutdown of business

operations, would require Defendants to honor their contractual obligation to provide coverage. In March 2020, such a catastrophe took place when Plaintiff was forced to close its salon due to the COVID-19 pandemic. All across the country, including in Florida and New York, government authorities issued closure orders to businesses, including the businesses operated by Nora's, in an effort to stop the rapid spread of the deadly COVID-19 virus. Orders from Civil Authorities requiring businesses to close have resulted in massive losses to businesses throughout the country. As a result, many insureds, including Plaintiff, filed claims for Business Income coverage, Extra Expense coverage, coverage for losses due to the actions of a Civil Authority, and Business Income from Dependent Properties.

3.     In response to the business interruption claims filed by Plaintiff and thousands of other class members resulting from the COVID-19 pandemic, Defendants have systematically denied and continue to deny and refuse to provide payment for insurance claims for coverage for similar losses and expenses by insureds holding policies that are, in all material respects, identical. Defendants' decision to not provide coverage and/or its decision to refuse to pay claims under the common policy forms issued to Plaintiff and the putative class members constitutes a breach of contract and provides them with the right to seek a declaratory judgment pursuant to 28 U.S.C. § 2201(a) on behalf of itself and the class members establishing that they are entitled to receive the benefit of the insurance coverage it purchased and for indemnification of the businesses losses it has sustained.

## PARTIES, JURISDICTION AND VENUE

4.     Plaintiff Nora's is a corporation organized under New York law with its principal place of business located at 81 Old Tappan Road, Tappan, New York 10983. Nora's operates a beauty salon.

5.      Defendant Farmers is a California corporation with its principal place of business located at 4680 Wilshire Blvd, Los Angeles, California 90010. Farmer's is an insurance company engaged in the business of selling insurance contracts to commercial entities such as Plaintiff in New York, and in all fifty states, including in states like Florida, and including by and through its wholly-owned subsidiaries.

6.      Defendant Truck is an insurance exchange organized under California law with its principal place of business located at 6301 Owensmouth Avenue, Woodland Hills, CA 91367. Defendant Truck is a subsidiary of Defendant Farmer's.

7.      At all times material, Defendants engaged in substantial and not isolated activity on a continuous and systematic basis in the state of Florida by issuing and selling insurance policies in Florida and by contracting to insure property located in Florida.

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because it involves citizens of different states and the amount in controversy exceeds $75,000.

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because there is diversity between Defendants and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claim occurred in this district and/or a substantial party of the property that is the subject of the action is situated in this district.

11.     This Court has personal jurisdiction over Defendants because Plaintiff's claims arise out of, among other things, Defendants conducting, engaging in, and/or carrying on business in Florida; Defendants breaching a contract in this state by failing to perform acts required by contract to be performed in this state; and Defendants contracting to insure property in Florida. Defendants also purposefully availed themselves of the opportunity of conducting activities in the state of Florida by marketing their insurance policies and services within the state, and intentionally developing relationships with brokers, agents, and customers within the state to insure property within the state, all of which resulted in the policy at issue in this action.

## **FACTUAL BACKGROUND**

### A. *Insurance Coverage*

On or about March 11, 2020, Nora's renewed the Policy, a property insurance policy issued and underwritten by Defendants. The insured premises under the policy is 81 Old Tappan Road, Tappan NY 10893. A copy of Nora's 2017-2018 policy, which is identical in all material respects to the operative policy, is attached as Exhibit A.

12.     The Policy uses standard common forms that contain the same and/or substantially similar provisions at issue in this action as those issues by Defendants to the members of the putative class as defined herein.

13.     The Policy is an all-risk insurance policy. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded.

14.     In accordance with the all-risk nature of the Policy, Defendants agreed to pay for all losses caused by a "Covered Cause of Loss," defined as 'RISKS OF DIRECT PHYSICAL LOSS" unless the loss is excluded or limited in the Policy.

15.     One type of coverage provided by the Policy is for loss of business income, often called business interruption insurance. This coverage is specifically provided for in a section of the Policy titled "Business Income."

16.     Pursuant to this coverage, Defendants promised to pay for "Loss of Business Income" caused by a Covered Cause of Loss. Specifically, Defendants promised to pay for the

> actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration,' but not to exceed 12 consecutive months. The suspension must be caused by direct physical loss or damage to property at the 'described premises,' including personal property in the open, or in a vehicle, within 1000 feet, caused by or resulting from a Covered Cause of Loss.

17.     The Policy defines "Business Income" as "1. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (b) Continuing normal operating expenses incurred, including payroll if there had been no direct physical loss or damage."

18.     "Period of Restoration" means:

> … the period of time that:
>
> a.  Begins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the "described premises", and
>
> b.  End on the earlier of:
>
> > (1) The date when the property at the 'described premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
> >
> > (2) The date when business is resumed at a new permanent location.

19.     The Policy also provides a coverage for "Extra Expense." Pursuant to this section of the Policy, Defendants promised to pay for "reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss of or damage to such property caused by or resulting from a Covered Cause of Loss."

20.     Additionally, under the Policy, Defendants also promised to cover "Business Income from Dependent Properties." This coverage requires Defendants to pay for loss of business income that occurs within the less of the "period of restoration" at the "dependent property" where

the direct loss or damage occurs or 30 days, where the loss is caused by the necessary suspension of operations caused by direct physical loss of or damage by a Covered Cause of Loss to "dependent property" at a premises the Policy owner does not own, lease, or operate.

21.     "Dependent Property" means "premises operated by others on whom you depend to: 1. Deliver materials or services to you, or to others for your account (not including water, communication or power supply services); 2. Accept your products of services; 3. Manufacture products for delivery to your customers under contract of sale; or 4. Attract customers to your business."

22.     The Policy also provides "Civil Authority" coverage for "the actual loss of 'business income' you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the 'described premises' due to direct physical loss of or damage to property, other than at the 'described premises,' caused by or resulting from any Covered Cause of Loss." This coverage begins "after the action by the civil authority for a period of up to three consecutive weeks after coverage begins."

23.     The Civil Authority coverage is an independent basis for business interruption coverage that can be triggered even when the standard business interruption coverage is not.

24.     Plaintiff's Policy does not contain any exclusion that would apply to allow Defendants to deny coverage for losses caused by the interruption of Plaintiff's business and the actions of civil authorities.

25.     The Policy does not contain any exclusion which would apply to allow Defendants to completely deny coverage for losses caused by COVID-19 and related actions of civil authorities taken in response to COVID-19.

26.     Because the Policy is an all-risk policy and does not exclude Plaintiff's losses, Plaintiff's losses are covered up to the applicable limits of insurance.

**B.  *The COVID-19 Pandemic***

27.     COVID-19 is a novel coronavirus that originated in Wuhan, China at the end of 2019 and rapidly spread around the world, infecting millions of people, including over 2.15 million Americans. Over 118,000 Americans have died due to COVID-19.

28.     COVID-19 is a physical substance that can cause lethal illness. COVID-19 can be present outside the body in viral fluid particles. COVID-19 is highly contagious and easily communicable through droplets in the air and on surfaces.

29.     The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. Contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces within the Insured Property.

30.     COVID-19 remains capable of being transmitted on a variety of inert physical surfaces for various periods of time. For example, reports issued by the National Institute of Health ("NIH") indicates that COVID-19 remains stable and transmittable in airborne aerosols for up to three hours, on copper for up to four hours, on cardboard for up to 24 hours, and on plastic and stainless steel for up to two to three days. Moreover, the COVID-19 pandemic has been exacerbated by the fact that the virus physically infects and stays on surfaces of some objects or materials for up to 28 days.

31.     The Center for Disease Control ("CDC") has issued guidance recommending people not to gather in groups larger than 10. Pursuant to CDC guidelines, people face increased danger of contracting COVID-19 in places where people congregate and are in close proximity to one another, and especially in indoor environments.

32.     COVID-19 has been transmitted in a variety of ways, including transmission (a) by way of human contract with surfaces and items of physical property; (b) by human to human contact and interaction, including places like bars and restaurants, retail stores, and hair and beauty salons, and the like; and (c) through airborne particles emitted into the air and even recirculated through air conditioning units.

33.     The presence of COVID-19 particles renders physical property unsafe and impairs its value, usefulness, and/or normal function, causing direct physical harm to property and resulting in direct physical loss and physical damage to property.

34.     The presence of COVID-19 particles and/or the presence of persons infected with COVID-19 or carrying COVID-19 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness, and/or normal function, and resulting in direct physical loss to and of the premises and property.

### C.  *The Covered Cause of Loss*

35.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

36.     As of the date this complaint is filed, New York had over 399,000 total positive cases of COVID-19.

37.     In response to the public health emergency caused by the COVID-19 pandemic, civil authorities across the United States, including the civil authorities with jurisdiction over Plaintiff in New York, have issued Closure Orders restricting and prohibiting access to Plaintiff's insured property and the insured properties of other putative class members.

38.     In New York, between May 7, 2020 and June 2020, New York Governor Cuomo issued dozens of executive orders concerning COVID-19. Indeed, by June 21, 2020, Governor Cuomo had issued 44 orders continuing the temporary suspension and modified of laws relating to the disaster emergency. *See* https://www.governor.ny.gov/executiveorders.

39.     On May 7, 2020, Governor Cuomo declared a State disaster emergency for the entire State of New York to address the threat that COVID-19 poses to the health and welfare of New York residents and advisors. *See* Exec. Order 202.1.

40.     On March 12, 2020, Governor Cuomo issued an order requiring all large gathering and events to be cancelled or postponed, *see* Exec. Order 202.2, and, on March 16th, extended this prohibition to gatherings of more than 50 persons. *See* Exec. Order 202.3. Additionally, on March 16th, all restaurants and bars in New York were ordered to cease serving patrons food or beverage on premises, and all gyms, fitness centers or classes, and movie theaters were also ordered to close until April 15th. *Id.* In a separate order issued March 16th, Governor Cuomo also closed all New York public school until April 1 and permitted nonessential government workers to work from home. *See* Exec. Order 202.4.

41.     On March 18, 2020, Governor Cuomo issued an order closing all indoor common portions of large retail shopping malls and closing all places of public amusement. *See* Exec. Order 202.5.  In a separate order issued March 18th, Governor Cuomo ordered all businesses and not-for-profit entities in the state to utilize, to the maximum extent possible, any telecommuting or work from home procedures that they could safely utilize, and ordered employer to reduce all in-person workforces at any work locations by 50% no later than March 20 at 8 pm. *See* Exec. Order 202.6.

42.     On March 19, 2020, Governor Cuomo issued an order closing to the public by March 21 at 8 pm all barbershops, hair salons, tattoo or piercing parlors and related personal care services. *See* Exec. Order 202.7. The Governor further ordered all in-person to workforces to be reduced at any work location by 75% no later than March 21 at 8 pm. *Id.* As a consequence of this order, Plaintiff's business was required to close.

43.     On March 20, 2020, Governor Cuomo issued an order requiring all nonessential businesses and not-for-profit entities in the state to reduce in-person workforces at any work locations by 100% no later than March 22 at 8 pm. *See* Exec. Order. 202.8. Thus, by March 22nd, all nonessential businesses in New York were closed except for telecommuting or work from home.

44.     In the following weeks, Governor Cuomo entered additional Closure Orders that banned all public and private gatherings of any size, closed public schools for the rest of the school year, and extended previous Closure Orders for nonessential businesses (including Plaintiff's)—first through April 29, 2020 (Exec. Order 202.14), and then through May 15, 2020 (Exec. Order 202.18).

45.     On May 14, 2020, Governor Cuomo issued an order once again extending the prior Closure Orders for non-essential business until 11:59 pm on May 28, 2020, with the exception of "Phase One industries." *See* Exec. Order 202.31.

46.     Over the next month, Governor Cuomo entered additional orders gradually permitting parts of the New York economy to re-open in limited ways.

47.     Closure Orders entered by municipal and county governments throughout Florida recognize that COVID-19 poses a threat to the loss of property.

48.     Closure Orders containing statements recognizing that COVID-19 causes business income loss and loss of property and property damage have been issued by many Florida counties, including Broward, Escambia, Gadsden, Hillsborough, Martin, Orange, Osceola, Pinellas, St. Lucie, and Walton Counties. *See* Broward Cnty. Administrator's Emergency Order 20-01 ("this Emergency Order is necessary because of the propensity of the virus to spread person to person and also because the virus is *physically causing property damage* due to its proclivity to attach to surfaces for prolonged periods of time."); Escambia Cnty. Res. 2020-37 ("COVID-19 and infection diseases have the capacity to pose a significant, imminent, and dangerous threat to the health, safety, and welfare of the inhabitants of Escambia County, Florida, visitors and tourists to Escambia County, Florida, *as well as to their real and personal property* . . . the COVID-19 virus has the propensity to attach to surfaces for prolonged periods of time, *thus causing property damage* and continuing the spread of the virus.") (emphasis added); Gadsden Cnty. Res. 2020-014 ("there is reason to believe that COVID-19 is spread amongst the population by various means of exposure, including the propensity to spread person to person and the propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing increased infections to persons, *and property loss and damage* in certain circumstances.") (emphasis added); Hillsborough Cnty. Exec. Order dated March 27, 2020 (stating COVID-19 is "creating property or business income loss and damage"); Martin Cnty. Emergency Order 20-04 (stating COVID-19 is "creating property or business income loss and damage"); Orange Cnty. Emergency Executive Order No. 2012-12 (stating that "COVID-19 is spread amongst the population by various means of exposure, including the propensity to spread person to person and the propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing increased infections to persons"); Osceola Cnty. Emergency Order No. 2

(stating COVID-19 causes a "serious threat to life *and property* within the County") (emphasis added); Pinellas Cnty. Res. 20-20 (stating COVID-19 causes "property loss and damage"); St. Lucie Cnty. Order dated March 31, 2020 ("COVID-19 is causing property damage and business income loss due to its proclivity to attach to surfaces for prolonged periods of time and thereby creating a dangerous physical condition; and [a]s a governmental civil authority action, it is necessary to impose the regulations and restrictions set forth herein in response to the dangerous physical conditions that currently exist and to stop the COVID-19 virus from spreading."); Walton Cnty. Resolution 2020-10 ("the novel coronavirus physically is causing property damage due to its proclivity to attach to surfaces for prolonged periods of time.").

49.     Similarly, in New York City, Emergency Executive Order No. 100 recognizes that the order "is given because of the propensity of the virus to spread person to person and also because the virus physically is causing property loss and damage[.]"

50.     Closure Orders containing similar statements recognizing that COVID-19 causes business income loss and loss of property and property damage have also been issued by many Florida municipalities, including City of Aventura, City of Coral Springs, Town of Indian Shores, City of Lauderdale Lakes, City of Miami, City of North Miami, City of Oakland Park, City of Sarasota, and City of Venice. *See* City of Aventura Order dated March 24, 2020 (explaining the COVID-19 "virus physically is causing property damage due to its proclivity to attach to surfaces for prolonged periods of time"); City of Coral Springs Emergency Order 2020-11 ("COVID-19 attaching to surfaces contaminates the area and therefore also causes property damage . . . the virus physically is causing property damage"); Town of Indian Shores Resolution 05-2020 ("the COVID-19 virus has the propensity to attach to surfaces for prolonged periods of time, thus causing property damage and continuing the spread of the virus."); City of Lauderdale Lakes

Emergency Order 2020-01 ("the virus physically is causing property damage due to its proclivity to attach to surfaces for prolonged periods of time."); City of Miami Decl. of a State of Emergency dated March 26, 2020 ("COVID-19 may be spread amongst the population by various means of exposure, including the propensity to spread person-to-person and the propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing property loss and damage in certain circumstances"); City of North Miami "Safer at Home" Emergency Order ("this Order is given because of the propensity of the virus to spread person to person and also because the virus is physically causing property damage due to its proclivity to attach to surfaces for prolonged period of time."); City of Oakland Park Proclamation 2020-002 ("This Order is given because of the propensity of the virus to spread person to person and also because the virus physically is causing property damage due to its proclivity to attach to surfaces for prolonged period of time."); City of Sarasota Emergency Order dated May 1, 2020 ("the COVID-19 virus has the propensity to attach to surfaces for prolonged periods of time, thus causing property damage and continuing the spread of the virus"); City of Venice Executive Order 2020-01 ("COVID-19 has the propensity to attach to surfaces for prolonged periods of time, thus causing property damage and continuing the spread of the virus").

51.     Some state courts have already agreed with Plaintiff's position that physical loss and damage exists resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020).

52.     Furthermore, orders issued in states such as New York, Colorado, Washington, Indiana, New Mexico, North Carolina, Missouri, and Illinois have all recognized that COVID-19 poses a specific threat to property and can cause property loss and damage.

53.     The Closure Orders issued by civil authorities covering non-essential businesses in Florida and New York (such as Plaintiff's) are similar to Closure Orders that have been issued nationwide by state and local civil authorities.

54.     The presence of COVID-19 caused direct physical loss of and/or damage to the Insured Property under the Policy by, among other things, damaging the property, denying access to the property, preventing customers and patients from physically occupying the property, causing the property to be physically uninhabitable by customers and patients, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises.

55.     The Closure Orders of civil authorities prohibited access to Plaintiff and other class members' Insured Properties, and the areas immediately surrounding the Insured Properties, in response to dangerous physical conditions resulting from a covered cause of loss.

56.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and other class members sustained a suspension of business operations, sustained losses of business income, and incurred extra expenses. Plaintiff has also sustained business income losses due to direct physical loss or physical damage at the premises of dependent properties.

57.     Plaintiff's losses and expenses have continued through the date of filing this action.

58.     Plaintiff's losses and expenses are not excluded from coverage under the Policy. Because the Policy is an all-risk policy and Plaintiff has complied with its contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

59.     Consistent with the terms and procedures of the Policy, Plaintiff submitted a claim for loss to Defendants under the Policy due to the presence of COVID-19 and the shutdown Civil Authority orders.

60.     In violation of the Policy's plain language and its own contractual obligations, Defendants denied Plaintiff's claim and refuse to pay for Plaintiff's losses and expenses.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

62.     Plaintiff seeks to represent nationwide classes defined as:

a.     All persons and entities with Business Income coverage under a property insurance policy issued by Defendants that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

b.     All persons and entities with Civil Authority coverage under a property insurance policy issued by Defendants that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

c.     All persons and entities with Extra Expense coverage under a property insurance policy issued by Defendants that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their property insurance policy (the "Extra Expense Declaratory Judgment Class").

d.     All persons and entities with Business Income from Dependent Properties coverage under a property insurance policy issued by Defendants that suffered an actual loss of Business Income caused by direct physical loss or physical damage at a

dependent property or properties ("the Business Income from Dependent Properties Declaratory Judgment Class").

63.     Excluded from each defined Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

64.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

65.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

66.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class Members, including, without limitation:

    a.  Defendants issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class Members;

    b.  whether the Class suffered a covered loss based on the common policies issued to members of the Class;

c.   whether Defendants wrongfully denied all claims based on COVID-19;

d.   whether Defendants' Business Income coverage applies to a suspension of business caused by COVID-19;

e.   whether Defendants' Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

f.   whether Defendants' Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g.   whether Defendants' Business Income from Dependent Properties coverage applies to a loss of income caused by loss or damage to dependent properties;

h.   whether Defendants has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

i.   whether Plaintiff and the class are entitled to an award of reasonable attorney fees, interest and costs.

67.   **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class Members' claims because Plaintiff and the other Class Members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties coverages. Plaintiff's claims are based upon the same legal theories as those of the other Class Members. Plaintiff and the other Class Members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

68.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).**
Plaintiff is an adequate Class representative because its interests do not conflict with the interests
of the other Class Members who it seeks to represent, Plaintiff has retained counsel competent and
experienced in complex class action litigation, including successfully litigating class action cases
similar to this one, where insurers breached contracts with insureds by failing to pay the amounts
owed under their policies, and Plaintiff intends to prosecute this action vigorously. The interests
of the above-defined Classes will be fairly and adequately protected by Plaintiff and their counsel.

69.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other
Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-
wide adjudication as to the interpretation, and resultant scope, of Defendants' Business Income,
Civil Authority, Extra Expense, and Business Income from Dependent Properties coverages. The
prosecution of separate actions by individual members of the Classes would create an immediate
risk of inconsistent or varying adjudications that would establish incompatible standards of
conduct for the Defendants. Moreover, the adjudications sought by Plaintiff could, as a practical
matter, substantially impair or impede the ability of other Class Members, who are not parties to
this action, to protect their interests.

70.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**
Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other Class
Members, thereby making appropriate final injunctive relief and declaratory relief, as described
below, with respect to the Class Members.

71.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is
superior to any other available means for the fair and efficient adjudication of this controversy,
and no unusual difficulties are likely to be encountered in the management of this class action.

Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

72.    Plaintiff repeats and realleges Paragraphs 1–71 as if fully set forth herein.

73.    Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

74.    Plaintiff's policy with Defendants, as well as those of the other Business Income Declaratory Judgment Class Members, are contracts under which Defendants were paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Declaratory Judgment Class Members' losses for claims covered by the policy.

75.    Plaintiff and the other Business Income Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiff and the other Business Income Declaratory Judgment Class Members are entitled.

76.    Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

77.     An actual case or controversy exists regarding Plaintiff and the other Business Income Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class Members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

78.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.  Plaintiff and the other Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b.  Defendants are obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class Members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT II**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

79.     Plaintiff repeats and realleges Paragraphs 1–71 as if fully set forth herein.

80.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

81.     Plaintiff's insurance policy with Defendants, as well as those of the other Civil Authority Declaratory Judgment Class Members, are contracts under which Defendants were paid

premiums in exchange for their promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class Members' losses for claims covered by the policy.

82.     Plaintiff and the other Civil Authority Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class Members are entitled.

83.     Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

84.     An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class Members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class Members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

85.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.   Plaintiff and the other Civil Authority Declaratory Judgment Class Members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b. Defendants are obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class Members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT III
## DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)

86.     Plaintiff repeats and realleges Paragraphs 1–71 as if fully set forth herein.

87.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

88.     Plaintiff's insurance policy with Defendants, as well as those of the other Extra Expense Declaratory Judgment Class Members, are contracts under which Defendants were paid premiums in exchange for their promise to pay Plaintiff and the other Extra Expense Declaratory Judgment Class Members' losses for claims covered by the policy.

89.     Plaintiff and the other Extra Expense Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class Members are entitled.

90.     Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

91.     An actual case or controversy exists regarding Plaintiff and the other Extra Expense Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class Members for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

92.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

    a.   Plaintiff and the other Extra Expense Declaratory Judgment Class Members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    b.   Defendants are obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class Members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT IV**
**DECLARATORY JUDGMENT – BUSINESS INCOME FROM DEPENDENT PROPERTIES COVERAGE**
**(Claim Brought on Behalf of the Business Income from Dependent Properties Declaratory Judgment Class)**

93.     Plaintiff repeats and realleges Paragraphs 1–71 as if fully set forth herein.

94.     Plaintiff brings this Count both individually and on behalf of the other members of the Business Income from Dependent Properties Declaratory Judgment Class.

95.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

96.     Plaintiff's Policy, as well as the policies of other Business Income from Dependent Properties Declaratory Judgment Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Business Income from Dependent Properties Declaratory Judgment Class members' losses for claims covered by the Policy.

97.     In the Policy, Defendants promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained due to direct physical loss or physical damage at the premises of a dependent property.

98.     Plaintiff and Business Income from Dependent Properties Declaratory Judgment Class members suffered losses of business income due to direct physical loss and/or physical damage at the premises of dependent properties.

99.     These losses triggered business income from dependent properties coverage under the Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies.

100.    Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

101.    Defendants, without justification, dispute that the Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies provide coverage for these losses.

102.    Plaintiff seeks a Declaratory Judgment that its Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies provide coverage for the losses of business income attributable to the facts set forth above.

103.    An actual case or controversy exists regarding Plaintiff's and other Business Income from Dependent Properties Declaratory Judgment Class members' rights and Defendants' obligations to reimburse Plaintiff and other Business Income from Dependent Properties Declaratory Judgment Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

104.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

    a.  The Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies provide coverage for Class members' losses of business income from dependent properties.

    b.  Defendants are obligated to pay Plaintiff and the other Business Income from Dependent Properties Declaratory Judgment Class Members the full amount of the contingent income losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class Members, respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

    a.  Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

    b.  Entering declaratory judgments on Counts I–IV in favor of Plaintiff and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory

Judgment Class, Extra Expense Declaratory Judgment Class, and the Business Income

from Dependent Properties Declaratory Judgment Class, as follows:

    i.    Business Income, Civil Authority, Extra Expense, and Business Income from

Dependent Properties losses incurred in connection with the Closure Orders and

the necessary interruption of their businesses stemming from the COVID-19

pandemic are insured losses under their policies; and

    ii.    Defendants are obligated to pay for the full amount of the Business Income,

Civil Authority, Extra Expense, and Business Income from Dependent

Properties losses incurred and to be incurred related to COVID-19, the Closure

Orders and the necessary interruption of their businesses stemming from the

COVID-19 pandemic.

  c.  Ordering Defendants to pay both pre- and post-judgment interest on any amounts

awarded;

  d.  Ordering Defendants to pay attorneys' fees and costs of suit; and

  e.  Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: July 2, 2020          Respectfully submitted,

          By: */s/ Adam M. Moskowitz*
          Adam M. Moskowitz
          Florida Bar No. 984280
          adam@moskowitz-law.com
          Adam A. Schwartzbaum
          Florida Bar No. 93014
          adams@moskowitz-law.com
          Howard M. Bushman
          Florida Bar No. 0364230

howard@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

William F. "Chip" Merlin, Jr.
cmerlin@MerlinLawGroup.com
New Jersey Bar No.  055182013
Florida Bar No.   364721
Shane Smith
ssmith@MerlinLawGroup.com
Florida Bar No. is 53130
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd.,
Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692